UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Andres Garza,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 17-cv-06334 |
| ) | |
| **Illinois Institute of Technology** ) | |
| **Defendant.** ) | |

## FIRST AMENDED COMPLAINT

Plaintiff Andres Garza ("Plaintiff") files this First Amended Complaint against Defendant Illinois Institute of Technology ("Defendant," "IIT" or "Institute") and alleges the following:

### Jurisdiction and Preliminary Statement

1. This action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §2000e et seq., and 42 U.S.C. § 1981a, the Civil Rights Act of 1866 as codified by 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

2. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, in that this is a civil action arising under the laws of the United States, specifically Title VII, 42 U.S.C. 2000e-16, 42 U.S.C. 1981, and the ADEA, 29 U.S.C. 626.

3. Defendant hired Plaintiff as Executive Director of its Career Management Center on February 25, 2013.

4. Defendant terminated Plaintiff in April 2016 because he is Latino, he is over the age of 40, and in retaliation for engaging in protected conduct.

**Venue**

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2).  Defendant resides in this district and a substantial part of the events or omissions giving rise to these claims occurred in this district.  Plaintiff was employed by and terminated by Defendant in this district.

**Parties**

6.      Plaintiff Andres Garza is a 63 year-old Latino man residing in Chicago, Illinois.  Plaintiff was employed by Defendant at its Career Management Center at all times relevant to this suit.

7.      Defendant, the Illinois Institute of Technology, is an accredited private university located in Chicago, Illinois.  Defendant employs at least 50 full-time employees and thus is a covered employer under both the ADEA and Title VII.

**Exhaustion of Administrative Remedies**

8.      On November 7, 2016, Plaintiff timely filed charges of age discrimination, national origin discrimination, and retaliation with the Equal Employment Opportunity Commission ("EEOC").

9.      On June 8, 2017, Plaintiff received a Notice of Right to Sue from the EEOC.  Plaintiff filed his Complaint within 90 days of receipt of that notice.  Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under the ADEA and Title VII.

## Statement of Facts

10. Plaintiff, a 63-year-old Latino man, was hired as Executive Director of Defendant's Career Management Center ("CMC") on February 25, 2013.

11. At all times during his employment, Plaintiff was fully qualified for his position and performed his job duties well.

12. In his only work performance review, Plaintiff exceeded expectations and was awarded the highest possible salary increase for someone in his position.

13. From July 2014 until Plaintiff's termination in April 2016, Plaintiff's supervisor, Mr. Doyle, treated Plaintiff differently from similarly-situated employees because of his national origin.

14. From July 2014 until Plaintiff's termination in April 2016, Mr. Doyle treated Mr. Garza differently from similarly situated employees because of his age.

15. Beginning in 2014, Mr. Doyle gradually removed Plaintiff's budgetary and supervisory authority over the CMC and distributed it to similarly-situated white and/or under-40 employees with similar skills and experience whom he hired or transferred into the CMC.

16. From July 2014-2016, Mr. Doyle canceled scheduled meetings with Mr. Garza but continued to meet with similarly-situated members of the CMC staff who were white and/or under 40.

17. In October 2014, Plaintiff complained to Human Resources concerning Mr. Doyle's management of him. The Human Resources employee did not act on Plaintiff's concerns, and instead told him that he should be glad to have a job. Plaintiff is informed and believes that IIT's Human Resources department received a number of complaints about Mr.

Doyle but did not take any action. Plaintiff concluded that it was futile to contact HR about Mr. Doyle's discriminatory behavior thereafter,

18. In 2015, Mr. Doyle removed Plaintiff's title as Executive Director, and assigned him a new title with a reduction in status.

19. Beginning in late 2013 and continuing through March 2013, Plaintiff organized and attended monthly lunch meetings of IIT Latino faculty and staff: to discuss how to better support Latino students at IIT, to work to establish a Latino Alumni Chapter and to exchange information relevant to the careers of Latino employees at IIT. Those meetings became a place where Latino employees, including Plaintiff, engaged in informal conversations about workplace conditions, including a general lack of advancement opportunities for Latinos.

20. Plaintiff notified the Human Resources Officer, Ms. Murill, about the meetings of Latino employees, and informed her that the purpose of the meetings was to work to establish a Latino alumnae chapter, and to exchange information relevant to the careers of Latino employees and their work at IIT. Plaintiff requested contact information and assistance in identifying and contacting Latino faculty and staff. Ms. Murill responded that such she was concerned about creating employee affinity groups based on ethnicity, and copied Plaintiffs' supervisor on her email response to Plaintiff. Plaintiff's supervisor, Mr. Doyle was aware that Plaintiff was holding these meetings with Latino employees, and that Plaintiff was the organizer of the meetings.

21. In March 2013, Plaintiff attended a rally and demonstration hosted by Latino students who were recipients of Deferred Action for Childhood Arrivals (DACA), organized for the purpose of presenting demands to the ITT Administration. The ITT administration office was aware that Plaintiff attended the demonstration.

4

22. Plaintiff's supervisor refused to hire or promote Latino or African-American employees but hired or transferred in several white and/or under 40 employees from other departments.

23. Plaintiff's supervisor, Mr. Doyle, demeaned Latino staff members by telling them that anyone could do their jobs, and that they simply had to write and fix resumes.

24. Plaintiff's supervisor, Mr. Doyle, commended, encouraged, and promoted white and/or under 40 employees while continuing to demean Latino, African-American, and over-40 employees.

25. Plaintiff's supervisor, Mr. Doyle, moved white and/or under 40 employees into positions with increased responsibilities and supervisory authority over Plaintiff and other Latino and African American employees, without publicly posting a promotional opening, without requiring the white and/or under 40 employees to apply for the promotions, and without permitting other employees to compete for those positions. At the same time, Mr. Doyle implemented a reduction in title for plaintiff and for other Latino and African American employees.

26. Plaintiff's supervisor, Mr. Doyle permitted white and/or under 40 employees to have flexible work schedules or work remotely but did not permit the same flexibility for Latino and African American employees.

27. A number of Latino, African-American, or over-40 employees left their employment at IIT as a result of Mr. Doyle's treatment of them. By April 2016, the Career Management Center's staff changed from primarily Latino and African-American, and over 40, to primarily white and under 40 employees.

28. In April 2016, Defendant laid off approximately 24 people, including Plaintiff.

29. Plaintiff was terminated and subjected to discrimination in the terms and conditions of his employment because he is Latino.

30. Plaintiff was terminated and subjected to discrimination in the terms and conditions of his employment because he is over 40.

31. Plaintiff was terminated and subjected to discrimination in the terms and conditions of his employment in retaliation for his active participation in activities aimed at addressing discrimination against Latino employees and students, such as organization of a Latino employee group and participation in a demonstration to support DACA students in their demands against IIT.

32. In the letter conveying the layoff, Defendant stated that Plaintiff's position was eliminated. However, the reason given was pretextual for the discriminatory and retaliatory treatment he experienced.

33. Plaintiff's job position and duties were given to a person who is not Latino.

## COUNT ONE
## National Origin Discrimination
## Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

34. The foregoing paragraphs are re-alleged and incorporated by reference herein.

35. Plaintiff, as a Latino, is a member of a protected class based on national origin.

36. Plaintiff, at all times employed by Defendant, performed his job satisfactorily.

37. Plaintiff was terminated because of his national origin, Latino.

38. Plaintiff's job position and duties were given to a person who is not Latino.

39. Plaintiff exhausted administrative remedies.

40. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at

trial.

41. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed on account of Plaintiff's national origin, with the wrongful intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

**COUNT TWO**
**Age Discrimination**
**Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621**

42. The foregoing paragraphs are re-alleged and incorporated by reference herein.

43. Plaintiff was over 40 years old and qualified for his position when he was terminated.

44. Plaintiff performed his job satisfactorily at all times employed by Defendant.

45. Defendant terminated Plaintiff because of Plaintiff's age.

46. Plaintiff exhausted his administrative remedies.

47. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

48. But for Plaintiff's age, he would not have been terminated.

49. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful and discriminatory intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

**COUNT THREE**
**Race Discrimination**
**The Civil Rights Act of 1866, 42 U.S.C. § 1981**

50. The foregoing paragraphs are re-alleged and incorporated by reference herein.

51. Plaintiff, as a Latino, is a member of a protected class based on race and national origin.

52. Plaintiff performed his job satisfactorily at all times employed by Defendant.

53. Defendant terminated Plaintiff because of his race and national origin.

54. By the conduct described above, Defendant deprived Plaintiff, a Latino, of the same rights as are enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 U.S.C. § 1981.

55. Plaintiff's supervisor, Mr. Doyle was motivated by discriminatory intent against Mr. Doyle on the basis of his national origin, a motivation that was demonstrated by his treatment of Plaintiff and other Latino employees who were demoted and suffered reduction in status, and who were subject to demeaning comments and discriminatory removal, to the benefit of white employees.

56. As a direct and proximate cause of Defendant's actions directed at Plaintiff, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

57. But for Plaintiff's engaging in protected activity, he would not have been terminated.

58. Defendant's actions were intentional, willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure Plaintiff, motivated by racial animus, and in conscious disregard of Plaintiff's rights.

**COUNT FOUR**
**Retaliation for Engaging in Protected Activity**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)**

59. The foregoing paragraphs are re-alleged and incorporated by reference herein.

60. Plaintiff engaged in protected activity, including organizing and attending a Latino employees' group and enhancing career opportunities for Latino employees, complaining

to Human Resources about his supervisor's conduct, and attending a demonstration that was held for the purpose of lodging demands with Defendant's administration on behalf of Latino DACA students.

61. Defendant was aware of and disapproved of Plaintiff's protected activities.

62. Defendant terminated Plaintiff because of his protected activity.

63. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

64. But for Plaintiffs' engagement in protected activity, Defendant would not have terminated Plaintiff.

65. Defendant's actions were intentional, willful, malicious, fraudulent, and oppressive, and were committed with the wrongful retaliatory intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

## COUNT FIVE
### Retaliation for Engaging in Protected Activity
### The Civil Rights Act of 1866, 42 U.S.C. § 1981

66. The foregoing paragraphs are re-alleged and incorporated by reference herein.

67. Plaintiff engaged in protected activity, including organizing and attending a Latino employees' group and enhancing career opportunities for Latino employees, complaining to Human Resources about his supervisor's conduct, and attending a demonstration that was held for the purpose of lodging demands with Defendant's administration on behalf of Latino DACA students.

68. Defendant was aware of and disapproved of Plaintiff's protected activities.

69. Defendant terminated Plaintiff because of his protected activity.

70. But for his protected activity, Defendant would not have terminated Plaintiff.

71. As a direct and proximate cause of Defendant's conduct, Plaintiff has suffered damages including economic losses and emotional distress, in an amount to be determined at trial.

72. Defendant's actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful retaliatory intent to injure Plaintiff and in conscious disregard of Plaintiff's rights.

## Jury Demand

73. The Plaintiff requests trial by jury.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court award him:

A. All past lost wages and benefits, plus interest;

B. Compensatory damages for injuries suffered because of this discrimination and retaliation;

C. An order that Defendant reinstate Plaintiff to a position comparable to his former one, or, instead of reinstatement, award him front pay and benefits;

D. All costs and reasonable attorney's fees incurred in connection with this action; and

E. Any other damages and further relief as deemed just.

Respectfully submitted,

/s/Verónica Cortez
Verónica Cortez
MALDEF
11 E Adams St., Suite 700
Chicago, IL 60603
Phone: 312-427-0701
Fax: 312-427-0691

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that she served a true and correct copy of **Plaintiff's First Amended Complaint**, a copy of which is attached, to counsel, via ECF on this 18th day of January, 2018, addressed to the following:

>William T. "Toby" Eveland
>Gillian Ashley Cooper
>Kellie Y Chen
>SAUL EWING ARNSTEIN & LEHR LLP
>161 N Clark, Suite 4200
>Chicago, IL 60601
>(312) 876-7100
>toby.eveland@saul.com
>gillian.cooper@saul.com
>kellie.chen@saul.com

>                        By:/s/Veronica Cortez
>
>Verónica Cortez
>MALDEF
>11 E Adams Street, Suite 700
>Chicago, IL 60603
>312.427.0701 – Telephone
>(312) 427-0691 – Fax
>vcortez@maldef.org
>**ATTORNEY FOR PLAINTIFF**